UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER COLLIER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-1263-JCH |
| | ) | |
| BI-STATE DEVELOPMENT AGENCY, | ) | |
| OF THE MISSOURI-ILLINOIS | ) | |
| METROPOLITAN DISTRICT | ) | |
| *d/b/a* METRO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Walter Collier's ("Collier") Motion to Remand, filed on July 30, 2014. (ECF No. 9). The Motion has been fully briefed and is ready for disposition.

**BACKGROUND**

Collier initiated this action by filing a Petition on January 15, 2014 in the Circuit Court for the City of St. Louis, State of Missouri. (Petition, ECF No. 4). Defendants timely removed on July 16, 2014. (Removal Notice, ECF No. 1).

"Defendant [Bi-State Development Agency of the Missouri-Illinois Metropolitan District ("Metro")] was created in 1949 by an interstate compact between Missouri and Illinois [the "Compact"] that was approved by the United States Congress pursuant to the Compact Clause of the United States Constitution." (Removal Notice ¶ 9). Metro exists primarily "to provide a unified mass transportation system for the [Missouri-Illinois] region." *KMOV TV, Inc. v. Bi-State Dev. Agency of the Missouri-Illinois Metro. Dist., d/b/a Metro*, 625 F. Supp. 2d 808, 810 (E.D.

Mo. 2008) (internal quotation marks omitted). To carry out that purpose, the statute creating Metro enumerates several powers that Metro has the authority to exercise. Mo. Rev. Stat. § 70.370.

Collier's Petition involves the alleged acceptance by Metro's Pension Committee, which is a named Defendant here and whose existence is not expressly established by the Compact, of a purported Qualified Domestic Relations Order ("QDRO"). (Petition ¶ 4). The effect of the purported QDRO was "to immediately reduce the pension obligations of the pension plan to" Collier. *Id.* ¶ 5. The problem with the document presented as a QDRO to the Pension Committee was that "in fact no order had been issued theretofore by [the Circuit Court for the City of St. Louis] or any other court or agency containing terms similar to those in the document presented to the Pension Committee . . . ." *Id.* ¶ 4. The Pension Committee is alleged, *inter alia*, to have had knowledge that the document presented to it had not been approved by the St. Louis City Circuit Court. *Id.* ¶ 5. While Collier does not explicitly state a legal theory, his claims appear to be breach of Metro's pension plan and breach of the Pension Committee's fiduciary duties. *See id.* ¶¶ 3, 6.

Collier suggests that remand is necessary because the Court does not have subject-matter jurisdiction over the issues contained in the Petition. (Plaintiff Support Memo, ECF No. 10, at 2). Defendants contend that the claims alleged in the Petition require construction of the Compact, which is a federal question. (Defendant Response, ECF No. 14, at 2).

## **DISCUSSION**

"Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand." *Manning v. Wal-Mart Stores East, Inc.*, 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004) (citing *Transit Cas. Co. v. Certain*

*Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)). The party invoking federal jurisdiction and seeking removal has the burden of establishing jurisdiction by a preponderance of the evidence. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781-82 (8th Cir. 2009); *see also Nicely v. Wyeth, Inc.*, 2011 WL 2462060 at *2 (E.D. Mo. Jun. 17, 2011).

A civil action brought in state court may be removed to the proper district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The alleged basis for federal jurisdiction here is "federal question" jurisdiction. 28 U.S.C. § 1331. The federal question statute grants to district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). One situation in which a claim can be said to arise under federal law is when "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 808 (internal quotation marks omitted).

Defendants are correct to point out that "Federal courts have jurisdiction over state law claims alleged against a bi-state entity when interpretation of the interstate compact that created the entity is implicated." (Defendant Response at 3). The Supreme Court has held that "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." *Cuyler v. Adams*, 449 U.S. 433, 440 (1981). Because the agreement itself is federal law, "the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question." *Id.* at 438.

Defendants maintain that federal question jurisdiction exists because interpretation of the Compact is necessary. (Defendant Response at 2). They contend that Compact interpretation is necessary because this case "(1) . . . implicates a uniquely internal function of Metro (i.e., management of an employee pension plan), as opposed to an external function like transporting passengers on a bus; and (2) the compact is silent as to which law applies to the internal function of managing a pension plan." *Id.* Therefore, according to Defendants, it is necessary to interpret the Compact to determine which law should apply. Collier contends that no federal question exists because "Defendants do not cite any term in the [C]ompact that calls for interpretation or application." (Plaintiff Reply, ECF No. 18, at 9).

The specifics of Defendants' contention are somewhat confusing. The principle on which their contention seems to rest is that bi-state entities are "formed through each state's surrender of a portion of its sovereignty to the compact entity[,]" (Defendant Response at 4 (citing *Int'l Union of Operating Eng'rs, Local 542 v. Delaware River Joint Toll Bridge Comm'n*, 311 F.3d 273, 276 (3d Cir. 2002)), and that the terms of that surrender "are found in the compact agreement itself . . . ." *Id.* at 4 (citing *Doe v. Pennsylvania Bd. of Prob. and Parole*, 513 F.3d 95, 105 (3d Cir. 2008)). They do not assert, however, that construction of the Compact is therefore necessary to understand the sovereignty issues inherent in a choice-of-law inquiry. Instead, they make the seemingly unconnected assertion that

> [t]he question of whether and to what extent the laws of the compacting states apply to a bi-state entity they create has been approached differently by various courts, but has been clarified in this Circuit which held that 'one party to an interstate compact may not enact legislation that would impose burdens upon the compact absent the concurrence of the other signatories.'

*Id.* at 4 (quoting *Bi-State Dev. Agency of the Missouri-Illinois Metro. Dist. v. Dir. of Revenue*, 781 S.W.2d 80, 82 (Mo. 1989) (*en banc*)). They contend further that this principle is broad

4

enough to require the consent of both compacting states when either state wishes to apply its own common law to a matter involving the Compact. (*See* Defendant Response at 7 ("whatever law that Plaintiff seeks to apply clearly creates a burden on Defendants and Illinois must have concurred in the laws' [*sic*] application")).

There are several problems with Defendants' contention. The first is that the Defendants do not make clear why the question of whether Illinois has consented to the application of Missouri law, which Defendants have made central to their argument, is relevant to whether interpretation of the Compact is necessary. Even if the consent question is relevant to the choice-of-law determination, Defendants have presented nothing to suggest that interpretation of the Compact will provide an answer. They have not suggested, for example, that the required consent can be found in the Compact, that the methods for consenting are set forth in the Compact, or that a particular provision would shed light on any issue relevant to the existence of consent. In other words, Defendants have failed to link the question of consent with the issue at hand, which is whether interpretation of the Compact is necessary and therefore a basis for subject-matter jurisdiction.

There is a broader possible reading of Defendants' argument: that interpretation is necessary to resolve the sovereignty concerns inherent in all choice-of-law determinations. Compact interpretation would therefore be necessary because the parameters of each state's surrender of sovereignty are defined in the Compact. But even on this more generous reading, Defendants have failed to demonstrate which portion or portions of the Compact will assist the Court in understanding the sovereignty issues related to choice of law. A vague claim that interpretation of the entire Compact may be necessary to understand sovereignty issues that may be important is not a firm enough basis on which to establish federal question jurisdiction.

There is also a more fundamental shortcoming in Defendants' contention. Defendants have not shown, based on Collier's Petition, that a choice-of-law determination will be necessary to the outcome of this case. They speculate that Missouri law applies. (Defendant Response at 2). But they do not show whether or how Missouri law conflicts with the law of the other two interested sovereigns, *i.e.* Illinois law and federal law. Nor do they put forward any other theory as to why the choice-of-law inquiry will impact the outcome. Defendants have therefore failed to show that a determination of which law applies is necessary in this matter. Thus, even if Compact interpretation is necessary to determine which law applies, it is not necessary to the outcome of the case and cannot serve as a jurisdictional basis.

In short, Defendants have not met their burden to show that interpretation of the Compact will more likely than not be necessary to decide the Collier's state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Walter Collier's Motion to Remand, (ECF No. 9), is **GRANTED**, and this matter is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri.

Dated this 20th day of October, 2014.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE